307 P.2d 792

Harry F. ADAMS et al., Plaintiffs-
Appellants,

v.

CITY OF ALBUQUERQUE, A Municipal
Corporation, Defendant-Appellee.

Felix ALDERETE et al., Plaintiffs-
Appellants,

v.

CITY OF ALBUQUERQUE, A Municipal
Corporation, Defendant-Appellee.

Frank A. CHAVEZ et al., Plaintiffs-
Appellants,

v.

CITY OF ALBUQUERQUE, A Municipal
Corporation, Defendant-Appellee.

No. 6099.

Supreme Court of New Mexico.

Jan. 21, 1957.

Rehearing Denied March 13, 1957.

Joseph L. Smith, Henry A. Kiker, Jr., Albuquerque, for appellants.

Frank L. Horan, Malcolm W. deVesty, Paul F. Henderson, Jr., Albuquerque, for appellee.

McGHEE, Justice.

These consolidated cases were filed by plaintiffs seeking to recover from the de-

fendant city the difference between amounts paid to them during the years 1950, 1951 and 1952 for wages as hourly rate employees of the city and the prevailing rate of such wages in the city as determined by the State Labor Commissioner.

By ordinance No. 475 (§§ 3.301, 3.302, 1949 Municipal Code of Albuquerque) it was provided that hourly paid employees receive not less than the prevailing rates for corresponding classes of employees in private industry; that the prevailing rates to be used in calculating the wages were the prevailing wage rates determined by the State Labor Commissioner, or in absence of determination by him, those determined by the city manager.

The ordinance seems to have been promptly forgotten and ignored by the city officials and the employees, without protest, were hired for and accepted rates of pay less than those determined by the labor commissioner to be the prevailing rates for corresponding classes of employees in Albuquerque. The matter was not called to the attention of the city until some time in 1952 by a person who was attempting to organize a municipal employees' union in Albuquerque.

The city defends on various grounds, the principal ones being that the city commission was without authority to delegate the power to set wage rates, especially where the delegation is sought to be made

to one not an official of the city and over whom it had no control; that the ordinance collides with § 11–6–6, N.M.S.A.1953, commonly known as the Bateman Act; that the ordinance is in clear violation of the Budget Control Acts, Ch. 11, N.M.S.A.1953, and would destroy control of the city commissioners in fiscal matters and that of the State Comptroller and other state officials charged with the duty of enforcing the statutes relating to the control of budgets and expenditures of city funds.

The city does not seriously contest the power of its commission to enact a minimum wage ordinance, but says the present ordinance is invalid.

The trial court sustained the city's motion to dismiss after depositions of two accountants were taken in the Chavez case. It was agreed judgments in the other cases would follow the one in that case.

Municipal budgets must be approved by the State Tax Commission, § 72–6–12, subd. 8, N.M.S.A.1953, which requires that revenue will be available to meet the expenses.

Chapter 11, N.M.S.A.1953, establishes an elaborate system of controls over the public finances of the state and its political subdivisions. The expenditures are under the constant supervision of the Comptroller, § 11–1–19. It is provided monies raised by municipalities must be expended in accordance with their budgets, unless transfers are approved in writing by the

Attorney General, Chief Tax Commissioner and the Comptroller acting on behalf of the State Board of Finance, § 11–1–20. It is also provided a municipal budget may not be increased unless the municipality has surplus funds or the activity sought to be financed will produce the revenue needed; as in the case of budget transfers, the increase must be approved by the Comptroller, Attorney General and Chief Tax Commissioner, § 11–1–21, subd. 1.

It is unlawful for the governing board of a city to disburse, expend or contract for the expenditure of more than the proportional share of the fiscal year budget during any fiscal year in which the terms of office of such officials will expire, as the number of months such officials are in office bears to the entire year, § 11–6–3.

In addition, we have the Bateman Act, § 11–6–6, in force, which reads:

"After March 12, 1897, it shall be unlawful for any board of county commissioners, city council, town trustees, board of education, board of trustees, or board of school directors of any school district, for any purpose whatever to become indebted or contract any debts of any kind or nature whatsoever during any current year which, at the end of such current year, is not and cannot then be paid out of the money actually collected and belonging to that current year, and any and all kind of indebtedness for any current year which is not paid and cannot be paid, as above provided for is hereby declared to be null and void, and any officer of any county, city, town, school district or board of education, who shall issue any certificate or other form of approval of indebtedness separate from the account filed in the first place or who shall, at any time, use the fund belonging to any current year for any other purpose than paying the current expenses of that year, or who shall violate any of the provisions of this section, shall be deemed guilty of a misdemeanor and upon a conviction thereof shall be fined not less than one hundred ($100) nor more than one thousand dollars ($1,000) or be confined in the county jail for a period of not more than six (6) months or by both such fine and imprisonment, in the discretion of the court trying the case."

■ The responsibility for conduct of affairs of a municipality is placed on its officers and employees, except for provided supervision by the state. We find no authority that municipal officers may delegate their authority to a state official in whose appointment they have no voice and over whom they have no control.

By the simple expedient of raising at will the pay rates for hourly paid employees in a large city like Albuquerque, the State

Labor Commissioner could make dead letters out of the statutes providing fiscal control and supervision over municipal finances and also destroy the effectiveness of the Bateman Act.

It is stated in 37 Am.Jur., Municipal Corporations, § 165:

> "It is a fundamental principle that municipal ordinances are inferior in status and subordinate to the laws of the state. An ordinance in conflict with a state law of general character and state-wide application is universally held to be invalid. The principle is frequently expressed in the declaration that municipal authorities, under a general grant of power, cannot adopt ordinances which infringe the spirit of a state law or are repugnant to the general policy of the state. * * * "

If the Albuquerque city commission desires to enact a minimum wage ordinance for city employees, or perhaps delegate the authority to establish wage rates to its manager, keeping in mind its budget and revenue, we feel it would be acting within its powers, §§ 14–21–47, 14–25–1, N.M.S.A.1953; but it may not lawfully delegate this authority to some outsider over whom it has no supervision or control.

The ordinance conflicts with the statutes referred to above and must be held invalid.

This conclusion makes it unnecessary to pass upon other points in the case.

The judgments are affirmed. It is so ordered.

LUJAN, C. J., and SADLER and COMPTON, JJ., concur.

KIKER, J., not participating.